SAMUEL J. FOOSANER, PETITIONER-APPELLANT, v. DI-
RECTOR, DIVISION OF TAXATION, RESPONDENT.

Argued February 9, 1971—Decided March 22, 1971.

58

Mr. *Samuel J. Foosaner* argued the cause for petitioner-appellant, *pro se.*

Mr. *Herbert K. Glickman,* Deputy Attorney General, argued the cause for respondent (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Glickman,* of counsel and on the brief.)

The opinion of the court was delivered by

HALL, J. This litigation challenges the applicability of the Unincorporated Business Tax Act, *N. J. S. A.* 54:11B–1 *et seq., L.* 1966, *c.* 137, to a practicing attorney at law.

Petitioner practices individually, with his office in Newark. The first return and payment of tax under the act was due April 15, 1968, covering the year 1967 for those on a calendar year basis. He filed a blank return, except to state that the statute was "not applicable" to him, and paid no tax. In an attached memorandum he argued that the legislation was not intended to apply to lawyers and professional fees received in their practice. The Director of the Division of Taxation rejected his contention and ruled that fees for all professional services performed on a self-employed basis, including those rendered by lawyers, are subject to the tax. Petitioner was invited to file a proper return, which he

declined to do.[1] Thereafter the Director made an assessment of tax in the amount of $1,000 and filed a certificate of debt therefor in the Superior Court.[2]

Petitioner then filed a complaint in the Law Division seeking a declaratory judgment that the act is unconstitutional and not applicable to him and requesting the voiding of the certificate of debt. The action was dismissed on motion on the ground that administrative remedies had not been exhausted. A petition of appeal to the Division of Tax Appeals followed, asserting essentially the same contentions. After hearing, the Division affirmed the Director's ruling and further held that, as an administrative agency, it had no power to adjudicate constitutional questions. Petitioner's appeal to the Appellate Division from the consequent judgment, raising the same issues, was certified upon our own motion before argument in that court. *R.* 2:12–1.

The pertinent language of the statute is of primary importance. The tax is imposed by *N. J. S. A.* 54:11B–3 "upon every individual or other unincorporated [business]" as "an annual excise tax, measured by the gross receipts of such unincorporated business, and allocated to the State as hereinafter provided at the rate of $\frac{1}{4}$ of 1%," subject to certain exemptions in case the receipts do not exceed specified minimum amounts.

"Unincorporated business" is defined, for purposes of the act, by *N. J. S. A.* 54:11B–2(e) as meaning and including "any trade, business, *profession* or occupation conducted or *practiced for profit* in whole or in part within this State by

---

[1]We understand petitioner has taken the same position in returns for tax years since 1967. While this litigation precisely involves only that for 1967, our conclusion will, as a practical matter, dispose of his contentions with respect to the later years.

[2]The Unincorporated Business Tax Act provides, *N. J. S. A.* 54:11B–19, that collection and enforcement of the tax shall be subject to the provisions of the State Tax Uniform Procedure Law, *N. J. S. A.* 54:48–1 *et seq.* The procedure followed here accords with that statute. The filing of a certificate of debt has the effect of a judgment.

*any individual* or other unincorporated entity not subject to the Corporation Business Tax Act (1945) (*P. L. 1945, c. 162*) or the Financial Business Tax Law (1946) (*P. L. 1946, c. 174*)" (emphasis supplied), except, *inter alia,* services performed, other than as a principal, by an individual as an employee, fiduciary, officer or director.

"Gross receipts" are defined, likewise for purposes of the act, *N. J. S. A.* 54:11B-2(b), to "mean and include *all receipts, of whatever kind and in whatever form,* derived by an unincorporated business, without any deduction therefrom on account of any item or cost, expense or loss" (emphasis supplied), except the sales price of property returned by customers for refund or credit.[3]

Historically, the unincorporated business tax came about as a result of the report of the Governor's Committee on Local Property Taxation made in December 1965. The Committee recommended the elimination of the existing tax on business personal property, assessed and collected locally on the same basis as the real property tax. It proposed a replacement tax program, which included an increase in the rate of the net income tax aspect of the corporation business tax, a new gross receipts tax on retail store sales, a new state-assessed business personal property tax and the unincorporated business gross receipts tax with which we are concerned. The Legislature substantially adopted the recommendations, *L.* 1966, Chapters 133 to 138, without statements of purpose annexed to the bills or other official explanation. But it obviously must have considered the Committee's report and the reasons for this particular tax given therein. The Com-

---

[3]The act, *N. J. S. A.* 54:11B-20(a), empowers the Director to adopt rules and regulations appropriate to the carrying out of the statute and its purposes. Pursuant thereto, the Director issued Ruling No. 2 in December 1967, relating to the application of the act to the legal profession, which excludes from gross receipts of a lawyer amounts received from a client in reimbursement of disbursements advanced and that portion of a fee received which is paid to another member of the bar based upon a division of service or responsibility in the particular matter.

mittee's statement of purpose of this measure therefore should be in mind in passing upon the intended coverage of the tax. The Committee had this to say (Report, *p. 55*):

### 3. Tax on Unincorporated Business

This tax does not represent a major revenue source under the Committee's proposal. It could be eliminated easily through an adjustment of the rates from the other three tax sources. The Committee concluded, however, that such a tax was desirable because it would retain within the tax umbrella certain elements of the business community which would otherwise escape all or most business taxes. *This is particularly true of professional and service areas.* The Committee considered using a net income approach rather than gross receipts but concluded that such an approach would be entirely too cumbersome considering the low rates and yields involved. At the levels suggested, it did not appear that a gross receipts approach would be unduly burdensome. (Emphasis added).

We think it is clear beyond any possible doubt, in light of this background and the precise language of the statute, that the Legislature intended the act to cover fees received from the practice of the professions, including the law, as well as receipts from mercantile and other commercial enterprises. The definition section, *N. J. S. A.* 54:11B-2, defines the terms for the purpose of and as used in all other sections, including that imposing the tax, *N. J. S. A.* 54:11B-3. So, throughout the act, the effect is that "unincorporated business," upon the gross receipts of which the tax is imposed, includes "any * * * profession * * * practiced for profit," and "gross receipts" means "all receipts, of whatever kind and in whatever form, derived by an unincorporated business." The "profit" requirement is intended to distinguish and exclude receipts from unincorporated entities conducted for charitable, benevolent and like purposes. In this sense a profession is certainly practiced "for profit" within the intendment of the law. We fail to see any possible interpretation which could exclude coverage of fees received by lawyers or members of other professions.

The suggestion that we should declare only the same coverage to be imposed as that required under New York's

counterpart statute is definitely without merit. Indeed, it cuts the other way, for the New York statute, in its definition section, expressly says that "the practice of law, medicine, dentistry or architecture, and the practice of any other profession in which capital is not a material income producing factor * * * shall not be deemed an unincorporated business." Art. 23 — Unincorporated Business Income Tax (*L.* 1960, *c.* 564), N. Y. Tax Law § 703(c) (McKinney's Consol. Laws, c. 60, 1966).

 Petitioner's constitutional contention, substantially withdrawn at oral argument, completely lacks substance. It is quite elementary that *Const.* 1947, Art. VIII, sec. 1, par. 1, providing that "property shall be assessed for taxation under general laws and by uniform rules," applies only to property taxes and not to excises. *Jersey Central Power & Light Co. v. City of Asbury Park,* 128 *N. J. L.* 141, 145 (Sup. Ct. 1942), *aff'd o. b. Jersey Central Power & Light Co. v. Monmouth County Board of Taxation,* 129 *N. J. L.* 253 (E. & A. 1942). In any event, the act involved here is a general law and specifies uniform rules of application with respect to all taxpayers classified within the definition of an "unincorporated business." Also, we see no constitutional or other legal objection to a tax measured by gross receipts rather than by net income. Most New Jersey taxes, *e. g.* the local property tax, are in no way dependent upon the net income of the taxpayer. Gross receipts are a commonly accepted basis of taxation, which the Legislature can very properly utilize. See *e. g.* public utilities gross receipts tax, *N. J. S. A.* 54:13–11 et seq., and 54:30A–49 *et seq.;* insurance companies gross premiums tax, *N. J. S. A.* 54:18A–1 *et seq.* This argument, as well as the real thrust of petitioner's other contentions earlier discussed, indicates his actual objection to be that a gross receipts tax is somehow ill-fitting and unbecoming to the practice of law and other professions. That is a matter for legislative and not judicial resolution.

██ Petitioner finally attacks the filing of the certificate of debt in an estimated amount and the entry of judgment

thereon (see footnote (2)) as a violation of due process, because done without assessment of the true amount of tax (prevented because a proper return was not filed) and without notice and hearing. The same contention was made and rejected with reference to an analogous tax enforcement statute (*N. J. S. A.* 54:29A–57) in *N. Y., Susequehanna and W. R. R. Co. v. Vermeulen,* 44 *N. J.* 491, 500–501 (1965), on the basis that the taxpayer may nonetheless continue to pursue his administrative and judicial remedies with respect to taxability and the amount thereof. We see no distinction in the instant case. The question is academic, however, because the Director agreed at oral argument that, if petitioner loses this case, he will have the opportunity to file a proper return and pay the tax called for, upon which event we assume the certificate of debt and judgment will be cancelled.

The judgment of the Division of Tax Appeals is affirmed, with leave to pettiioner to file a proper return and pay the tax assessed thereon, plus any appropriate interest, within 30 days from the date of filing of this opinion.

*For affirmance*—Chief Justice WEINTRAUB and Justices JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—6.

*For reversal*—None.